### JOHN PALMER

*v.*

### DAVID T. DOUGLAS *et al.*

*Filed at Springfield June 14, 1883.*

REDEMPTION *from sale on execution—after expiration of time—where fraud was practiced.* Land was sold on execution, at a grossly inadequate price, and bid in by one who was the family physician of the debtor, and regarded as an intimate friend and adviser, the debtor being an aged, illiterate person, almost wholly ignorant of his legal rights. The purchaser promised to give the debtor all the time he wanted to redeem, telling him he had fifteen months in which to redeem, and by artifice and misrepresentation lulled him into a sense of security until the time of redemption had passed, with the knowledge and participation of the assignee of the certificate of purchase, to whom a sheriff's deed was made. It was *held*, that the debtor, under these circumstances, was entitled, on bill in equity, to redeem from the sale, and have the sheriff's deed set aside as a cloud on his title.

APPEAL from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Messrs. WELDON & McNULTA, and Mr. J. M. WEAKLY, for the appellant.

Mr. IRA J. BLOOMFIELD, for the appellees.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The bill in this case was brought by John Palmer, the appellant, in the McLean circuit court, against David T. Douglas and James S. Pearson, the appellees, to redeem from an execution sale, and to remove an alleged cloud upon the title of the land in controversy.

The evidence shows that in 1877 Douglas loaned to Palmer $80, to secure which Palmer gave him a mortgage on ten acres of land, being the same now in dispute. Afterwards one Steadman obtained a judgment against Palmer, which became a lien upon the land. On the 24th of August, 1878,

the land was sold at sheriff's sale, under this judgment, for the sum of $76, to Douglas, to whom the sheriff at the time executed a certificate of purchase, which was subsequently assigned by him to Pearson, his father-in-law. The land not having been redeemed within the time prescribed by law, the sheriff executed to Pearson, as assignee of the certificate of purchase, a deed to the premises. Palmer thereupon filed the present bill, for the purposes already stated. The bill in substance charges, that Douglas, confederating with Pearson, his father-in-law, for the purpose of cheating and defrauding appellant out of his land, by sundry deceptive assurances, false promises, artifices and misrepresentations, specifically set forth in the bill, lulled appellant into security, and thereby induced him to allow the time for redemption to pass by without redeeming. On the hearing the circuit court rendered a decree dismissing the bill, and the complainant appealed to this court.

The appellant is an illiterate old man, some fifty-seven years of age, a blacksmith by trade, having followed the business ever since he was eighteen, and evidently with a very imperfect conception of his legal rights, at least so far as the subject matter of the present controversy is concerned. He was not on good terms with Pearson, who had not spoken to him for ten years. Appellant, however, had great confidence in Douglas, Pearson's son-in-law, with whom appellant was on intimate terms. Douglas is a physician by profession, and was, prior to the time of this controversy, the family physician of Palmer.

The appellant's account of the circumstances out of which this controversy arises, is testified to by him as follows: "I mortgaged the land to Douglas for $80. Steadman got a judgment against me for a balance on an old blacksmith shop, before a justice of the peace, took a transcript, and got a lien on the land after the mortgage. Douglas got the certificate of purchase. He said: 'I will make it all right.' I

paid on the mortgage three different times. When I made the last payment I wanted to know when I should pay this certificate. He (Douglas) said he would give me time. I asked him several times. He said he would give me any time. Then one day I wanted to know if he would give me time if he would let me know when the time was up. I told him I wanted to sell my hogs to pay it. He said I had better not sell now,—to hold awhile, and get better prices. I didn't sell them for about ten days. He said then that there was no hurry,—not to hurry about it,—if he was in my place he would not sell. In ten days I sold the hogs,—on a Monday,— and was to deliver them on Thursday following. I went to him. He said the time was out in two days, then. I asked him what was to be done about it. He said to ask 'Squire Davidson to fix it,—to get an order of court to make a deed to me. I went to Davidson. He said to see Douglas, and have him sign the certificates over, and then go to Blooming-ton and get the deed. That is what I told Douglas. He said, all right,—we will fix it up all right; and still said he would do that. I found out what he had done, and asked him if he had signed to Pearson. He said he had,—that he took Pearson's note for it. In the conversation when he told me to go to Davidson, I asked him how it was to be fixed. I told him what Davidson said. I suppose it was because he wanted to settle with me. It went a month and two days when I learned that Pearson had taken the deed. Then I got the money, and two or three dollars more, and gave it to Douglas, and told him I wanted him to fetch that deed to the land. He said he would see the old man, and he would fix it up all right. Me and him had a running account. He gave me his bill, and I made out my bill. It left something coming to me. He paid me a little one day. I had given him $90. He had carried it four weeks and two days. He had paid me $5 on it, and told me in a few days he would pay me the balance. One morning he said, here is the money.

I thought it was the money he owed me. I saw one corner of a $20 bill. I said I didn't want this money. He said he did, not want to carry it. He wouldn't take it back. He gave me $2 on account. I gave him the $90 to redeem the land. I don't know that he said anything about letting the certificate run along without taking a deed. He just said he would make it all right. I supposed it was all right. I let him have the money to make it all right. * * * I relied upon what he said, because I placed a great deal of confidence in him. He said he didn't want my land; that he wouldn't give me $15 an acre for it; that it didn't join him; that all he wanted was his money. He didn't say anything about time not being material, only he told me I would have fifteen months, and a judgment creditor would have eighteen. I learned I would have only twelve, and I went after him to fix it up. I was misled by the representations he had made as to time. I went out and had the money ready to redeem. I could have got it when it was due, if he had let me know when. I paid off the mortgage a year ago, at the doctor's house. Then I asked him to look at the certificate and see when it was due. He said he hadn't time,—he was going away,—but he would do it, and give me plenty of time. * * * I gave Douglas the $90, January 25, 1880. I have been a blacksmith since I was eighteen years old. I have not much education. I can write some. I can keep a book of my business,—that is about all. I don't write well. I am no scholar. I can't figure much. Douglas is a practicing physician. I placed a heap of confidence in him. He was physician for myself and family. He went security for me once or twice. He was a kind of a friendly adviser. The relations between Mr. Pearson and me has been very unfriendly. He has not spoken to me for ten years. I had a law suit with him,—one in the court, and two before the justice. I beat him. * * * Douglas said I would have fifteen months to redeem, and a judgment creditor eighteen."

This statement, in several particulars, is corroborated .by the witnesses Wilson and Davidson. It appears from the testimony of other witnesses, the land is worth from $25 .to $40 an acre. Douglas swears, in general terms, he never agreed to extend the time of redemption, but most of the specific facts and circumstances related by the former are not specifically denied or otherwise met, and Douglas himself admits that he told Palmer he would have fifteen months in which to redeem, and a judgment creditor three months longer.

There are some additional facts and circumstances, which we will not stop to detail or comment upon, which, in our judgment, tend to strengthen the hypothesis that Palmer was designedly lulled into security, and purposely thrown off his guard, through the artifice and dissimulation of Douglas, acting in concert with his father-in-law, who had an old grudge against Palmer, whereby the time of redemption was permitted to pass. When we consider the age of Palmer, and the fact that Douglas was his family physician, to whom he looked up as an intimate friend and confidential adviser, which is undisputed, and when we add to this the apparent and undisputed fact that the old man is illiterate, and was ignorant of his duties or rights with respect to the matter in controversy, there is certainly little, if any, room to doubt he has been purposely overreached and misled, and that the case made by the bill is sufficiently established to warrant the relief therein prayed. We think, from all the circumstances in the case, many of which do not appear in the foregoing statement, and which we do not deem necessary to specifically mention, it clearly appears that Pearson had notice of appellant's rights, so that he stands in no better position than Douglas, even if his equities could, in any contingency, be regarded as superior to Douglas, through whom he claims.

The decree of the circuit court is therefore reversed, and the cause remanded, with directions to that court to enter a decree in conformity with the prayer of the bill.

*Decree reversed.*

Mr. JUSTICE WALKER: I am unable to concur in the above opinion, and hold no grounds exist for granting relief.